Silver Beach Realty Corporation, Plaintiff, *v.* James Geelan, The City of New York, John H. Delaney, as Commissioners of Docks of the City of New York, and The People of the State of New York, Defendants.

Supreme Court, Bronx County, February, 1924.

Trespass — action to restrain defendants from obstructing access to plaintiff's property — acts contemplated to be done under permit granted deemed to constitute continuous trespass — owner has right to invoke aid of equity where trespass is continuous — grant of land for public highway construed to convey only easement — right to public use of road extinguished — city of New York without right to grant permit for occupancy of land and erection of boathouse where it had no title to shore or shore waters at location involved.

In an action to restrain defendant licensee from entering upon and obstructing access to plaintiff's property on the ground that he was committing a continuing trespass, it appeared that defendant city of New York granted defendant licensee permission to occupy a dock on plaintiff's land with the privilege of erecting a boathouse thereon and conducting a boating business along the shore front; that plaintiff's predecessor in title conveyed the land to that part of the town of Westchester subsequently annexed to the city of New York for a highway; that the provisions of the old Highway Law (Laws of 1797, chap. 43), under which the commissioners of the town laid out the highway, contained

no provisions authorizing the acquisition by a town of a fee title to land for highway purposes.

*Held,* that the acts contemplated to be done under the permit constituted a continuous trespass from day to day and the plaintiff was entitled to invoke the power of a court of equity to restrain such trespass.

It was not the intention of plaintiff's predecessor in title to convey a fee simple to the town of Westchester, but merely an easement for the public use of the highway.

The public right to the use of the highway was entirely extinguished where the town of Westchester took merely an easement in the land and where the proof conclusively showed that the land in question had been abandoned many years before the city of New York in 1895 annexed that portion of the town of Westchester and where the road had not been used within the memory of living man.

The city of New York, having no title to the shore or to the shore waters at the location involved, had no right to grant a permit to defendant licensee to occupy said land and to erect a boathouse thereon.

ACTION to restrain the defendants, other than the state of New York, from a continuing trespass upon the property of the plaintiff.

*Stern, Barr & Tyler* (*Charles J. Nehrbas,* of counsel), for plaintiff.

*George P. Nicholson,* corporation counsel (*Willoughby B. Dobbs,* of counsel) for defendant Geelan, and others.

*Carl Sherman,* attorney-general, for defendant The People of the State of New York.

DELEHANTY, J.    This action, tried before the court without a jury, was brought to restrain the defendants Geelan, the city of New York and the commissioner of docks from entering upon the plaintiff's property and from obstructing access from its property to the waters of the East river (or Long Island sound) and from doing any act or acts under a certain permit issued May 7, 1923, by the commissioner of docks to the defendant Geelan.    This permit granted to Geelan permission to occupy the " old town dock," property adjoining Fort Schuyler road or old Ferry road, at Throgg's Neck, borough of The Bronx, together with the privilege of erecting a boathouse thereon, and conducting a boating business thereat upon certain terms and conditions.    The preliminary objection raised by the defendants to the form of the action is not tenable.    The defendant Geelan under his permit to run for a year had entered upon the property in question and had " started to chop down trees."    Obviously the acts contemplated to be done under the permit would constitute a continuous trespass from day to day.    In this class of cases it is well settled that " where trespasses upon land are continuous the owner has a right to invoke the power ·of a court of equity to restrain such trespasses and thus prevent a multiplicity of suits."    *Coatsworth* v. *Lehigh Valley R. R. Co.,* 156 N. Y. 451, 457, and *Robins Dry Dock & Repair*

*Co.* v. *City of New York*, 155 App. Div. 258; affd., 213 N. Y. 631. Upon the merits the contention of the city is that when that part of the town of Westchester, in which the property in question is located, was annexed to the city, under chapter 934 of the Laws of 1895, the city thereby became vested with whatever title said town had in the property, and the city claims that such title was a fee simple. This is based upon the contention that one Abijah Hammond, an original owner of the farm containing the property in question, conveyed the fee simple therein to said town for a highway in the year 1801. The plaintiff, on the other hand, contends that the town took only an easement for the highway and that the fee still remained in said Hammond from whom the plaintiff by mesne conveyances claims title and possession, as the portion of the highway in question has long since been abandoned as a highway. The town records show that the commissioners of highways of the town of Westchester, acting under the provisions of the old Highway Law in chapter 43 of the Laws of 1797, made a certificate, dated March 29, 1800, which recited that the commissioners had thought it expedient and for the best interests of the town to alter a public road that had theretofore been laid through the farm of Abijah Hammond and by way of exchange for the former one. After further reciting that Hammond had agreed to pay all the expenses attending the alteration of the said road, and also to build for the town of Westchester a good and sufficient dock and landing place where the road was to terminate at the waters of the sound, the commissioners then " certify " that they " have laid out and accepted " the said road which is briefly described. In the following year on October 5, 1801, the town commissioners and said Hammond signed an instrument which recited that Hammond had agreed to build a dock for the town where the road therein mentioned terminated and that it had been thought expedient to extend the dock and make certain changes in the dimensions of the dock and in the location of the passage thereto and that the dock and road had been completed agreeably to said alteration by Hammond. The said instrument then recited: " The undersigned Commissioners of Highways of the Town of Westchester do accept said road and dock as they now are as a complete fulfillment of the agreement on the part of the said Abijah Hammond, and the said Abijah Hammond does hereby convey to the Town of Westchester the ground so taken and occupied as aforesaid." Although sealed, the instrument was not acknowledged, and was not recorded until more than twenty years later on February 21, 1822. The old Highway Law (Laws of 1797, chap. 43), under which the commissioners laid out the road

in question, applied to all the counties in the state except those of New York, Kings, Queens and Suffolk. That law contained no provisions authorizing the taking by a town of the fee title to land for highway purposes. The general rule is well settled both under the common law and under the statute highway laws that when land is taken by a town from an owner for a highway the town acquires an easement only for the public use, and that " when the language and intent of a statute do not otherwise require, the fee to land appropriated for a public use will remain in the owner." *Cortelyou* v. *Van Brundt*, 2 Johns. 357, 363; *Whitbeck* v. *Cook*, 15 id. 483; *Gidney* v. *Earl*, 12 Wend. 98; *Mott* v. *Eno*, 181 N. Y. 346, 363; *Appleton* v. *City of N. Y.*, 219 id. 150, 165, 166. Even in a case where a city is authorized to take a fee simple for a public road by condemnation proceedings, yet, where in lieu of such proceedings a voluntary formal conveyance by a quitclaim deed is executed by the owner granting and conveying the land to the city for a highway, such deed will be construed as granting an easement only, and not a fee simple. In *Bradley* v. *Crane*, 201 N. Y. 14, where a formal quit-claim deed was held to convey an easement only and not a fee simple for a highway, the court, at page 25, per Gray, J., said: " We must construe the language of the instrument which transfers the property for public use, in lieu of condemnation proceedings, strongly and strictly in favor of the landowners. The law will not, by construction, effect through the instrument a grant of a greater interest or estate than was essential to the public use for which the grant was sought. No implication is permissible that the instrument granted an estate greater than was absolutely necessary to satisfy its language and object." Applying these settled rules of construction to the statute and the instrument signed by said Hammond, I am of the opinion that it was not the intention of the said Hammond to convey, by the said informal instrument, a fee simple to the town of West-chester, but merely an easement for the right of way over the road in question. From the recitals and acceptance in the said certificate made by the commissioners in the previous year, 1800, and the subsequent changes in the dock and road leading thereto, it is evident that the instrument in question, made in 1801, was merely intended to evidence the fact that the commissioners had again accepted the road and dock, with the alterations, for public use, and that Hammond had signed the said second instrument merely to indicate that he acquiesced in the dedication of his land " so taken and occupied as aforesaid " for such public use, but with no intention of parting with the fee simple, which was not necessary for such purpose. The land in dispute, called the " old town dock

plot," was a part of said Hammond's farm, and extended southward about 150 feet in length and 66 feet in width. About one-third was upland, and the other two-thirds extended under the waters of the sound. The proof conclusively shows, and it is not disputed, that the old dock, if any, and the portion of the old road leading from the main road down through the upland third of the said plot to the old dock had been abandoned many years before the city in 1895 annexed that portion of the town of Westchester. In fact, buildings and trees had occupied the road in question for many years, and no dock or road leading thereto had ever been used in the memory of living men. Nothing but some boulders under water indicate that a dock has ever there existed. The city, in filing its street map in 1914, pursuant to the statute (Laws of 1895, chap. 1006, § 2), entirely omits therefrom the old road and old dock in question. Although the statute as to the abandonment of a highway for a period of six years does not apply in a case where a city or town owns the fee simple therein (*N. Y. Central & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113, 119), yet where, as here, the town of Westchester took merely an easement from Hammond for the public use of the road in question, the statute applies, and the public right to the use of the road was entirely extinguished. Highway Law, § 234; *Barnes* v. *Midland R. R. Terminal Co.*, 218 N. Y. 91, 98; *Matter of City of N. Y.* (*Ludlow Ave.*), 164 App. Div. 839, 841–843. The answer of the city admits, by not denying, that the upland containing the abandoned road in question lies within the lines of the land described in the complaint as owned by the plaintiff company which by mesne conveyances has acquired the fee simple title of the original owner, Abijah Hammond. The city does not claim any title to the said land under water, but concedes that a portion thereof, where the old dock seems to have been located, was granted by the state of New York in 1874 to Frederick C. Havemeyer, a predecessor in title of the plaintiff. The rest of the said land under water has always belonged to the state since prior to the time that Hammond owned the adjoining upland, and the state for that reason has been made a formal party to this action. Evidently, therefore, the said Hammond could not have conveyed any title to the said land under water, and the city concedes that the town of Westchester, if it now were in existence, would not claim any title to the land under water. The city, therefore, does not own the tideway at Throgg's Neck, as it does the tideway around Manhattan Island, and merely claims the rights of a riparian owner of the land in question upon the contention that it owns the fee simple title to the old abandoned road in controversy. Having no title, therefore,

to the shore or to shore waters at the location involved, the city had no right to grant a permit to the defendant Geelan to occupy the said land and erect a boathouse which would be a continuing trespass. *Steers* v. *City of Brooklyn,* 101 N. Y. 51, as distinguished and explained in *Sage* v. *Mayor,* 154 id. 61, 83, 84. Judgment must, therefore, be directed for the plaintiff for the relief prayed for in the complaint, except for damages withdrawn upon the trial, and the counterclaim of the city dismissed upon the merits. Settle findings and decision upon notice.

Judgment accordingly.